```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DEWEY W. DRY,                   )
                                )
          Plaintiff,            )
                                )
     v.                         )      1:13CV300
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Dewey W. Dry ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended and codified at 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for Social Security Disability Insurance benefits under Title II of the Act ("SSDI") and Supplemental Security Income benefits under Title XVI of the Act ("SSI").

Plaintiff subsequently filed a Motion for Judgment Reversing or Modifying the Decision of the Commissioner, or Remanding the Cause for a Rehearing (Doc. 9), and the Commissioner has filed a Motion for Judgment on the Pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Doc. 12). The administrative record has been certified to this court for review.[1]

For the reasons set forth below, the Commissioner's motion will be denied, Plaintiff's motion will be granted, and this case will be remanded for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

Plaintiff filed applications for SSDI and SSI benefits on July 22, 2009 and August 18, 2009, respectively, alleging a disability beginning on June 13, 2009. (Tr. at 171-77.) Plaintiff's claims were denied initially and upon reconsideration. (Id. at 42-43, 76-84.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 90-92.) The hearing was held on September 13, 2011. (Id. at 9-25.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 7.)

In a decision dated February 14, 2012, the ALJ found[2] Plaintiff was not disabled between June 13, 2009 and the day of the decision, and as a result, denied Plaintiff's claims. (Id. at 61-71.) On February 8, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (id. at 1-3), and Plaintiff filed the present action on April 11, 2013.

In his decision, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder; pain; fibromyalgia; and history of polysubstance abuse. (Tr. at 63.) However, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Id.) The ALJ specifically considered Listing 1.02, defining "Major Dysfunction of a Joint," and Listings 12.04 and 12.09, defining "Affective Disorders" and "Substance Addiction Disorders," respectively. 20 C.F.R. pt. 404, subpt. P, app. 1.

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry.

The ALJ determined that the Plaintiff had the Residual Functional Capacity ("RFC")[4] to perform "medium work," as Plaintiff "can lift/carry 50 pounds occasionally and 25 pounds frequently" and "can stand/walk 6 hours in an 8-hour day, and he can sit 6 hours in an 8-hour workday."  The ALJ also found that Plaintiff's RFC had the following limitations: "[Plaintiff] is limited to simple, routine and repetitive tasks, in a non-production low stress environment, with limited social interaction."  (Tr. at 64).

Having determined Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Id. at 69.) The ALJ then consulted the Medical-Vocational Guidelines outlined in 20 C.F.R. pt. 404, subpt. P, app. 2. Plaintiff's birthday is September 19, 1954, was 54 years old at the time he filed his applications, and was "an individual closely approaching advanced age." (Id.) However, by the time the ALJ rendered his decision in February 2012, Plaintiff met the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).

definition of a "[p]erson of advanced age." See 20 C.F.R. § 416.963(e).

The ALJ found Plaintiff has a high school education and is able to communicate in English. (Tr. at 70.) The ALJ did not make a finding as to whether or not Plaintiff's skills are transferrable. Applying these factors, the ALJ found that, if Plaintiff could perform the full range of "medium work" and once Plaintiff reached "advanced age," Plaintiff would meet the requirements of Medical-Vocational Guideline 203.15. (Id.) Rule 203.15 requires a finding of "not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.3 § 203.15.

However, because Plaintiff could not perform the full range of medium work due to his limitations listed above, the ALJ used the Medical-Vocational Guidelines as a starting point and consulted a vocational expert. (Id.) The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that he was able to perform, including cleaning positions, kitchen helper, and supply worker. (Id. at 70-71.)

After the hearing, the ALJ left the record open so that Plaintiff could submit additional evidence. (Id. at 24.) Plaintiff submitted a treatment note from Carolina Behavioral

Care dated August 5, 2011 (id. at 513-15), and some of the therapy notes from Triumph, LLC (id. at 516-56). (See id. at 231.) The ALJ also added a medical source statement from a consultative psychological examination conducted by Dr. Carol M. Gibbs. (Id. at 233, 557-60.) Plaintiff responded in opposition to this medical source statement. (Id. at 234.) No evidence was provided as to Plaintiff's physical limitations during this period.

On February 14, 2012, the ALJ entered his decision finding that Plaintiff was not disabled. (Id. at 61-71.) Plaintiff petitioned for review by the Appeals Council. (Id. at 235-39.) As his appeal was pending, Plaintiff submitted additional medical evidence of Plaintiff's foot problems, specifically medical records from Plaintiff's podiatrist, Dr. Mark Pifer, dated January 7, 2011 through February 11, 2011. (Id. at 5, 7, 561-63.) The Appeals Council reviewed this new evidence and the arguments made by Plaintiff but ultimately determined that there was no reason to review the decision of the ALJ. (Id. at 1-2.)

With the Appeals Council denial of Plaintiff's request to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner (id. at 1), and Plaintiff filed the present action on April 11, 2013, challenging that decision.

(Doc. 1.) The parties then each filed their present motions (Docs. 9, 12), and this issue is now ripe for adjudication.

## II. LEGAL STANDARD

Federal law authorizes judicial review of the Social Security Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines, 453 F.3d at 561.[3] However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock, 667 F.3d at 472 (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).

---

[3] Plaintiff applied for and was denied both SSDI benefits under Title II of the Act and SSI benefits under Title XVI of the Act. However, "[t]he statutory definitions and the regulations promulgated by the [Commissioner] for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

-7-

"It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Additionally, courts must review the entire record, including evidence that the Appeals Council incorporates into the administrative record, even if the ALJ did not have access to the evidence when the ALJ made his or her decision. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Pursuant to its powers under 42 U.S.C. § 405(g), this court can remand a case to the Commissioner, either to consider new

and material evidence, a "sentence six" remand,[4] or because the original ALJ's decision is not supported by substantial evidence or did not apply a correct legal standard, a "sentence four" remand. See 42 U.S.C. § 405(g).

## III. **ANALYSIS**

The crux of Plaintiff's argument is that the ALJ's physical RFC calculation that Plaintiff could "stand and walk for up to six hours in an eight-hour work day" was not supported by substantial evidence. (Tr. at 64; see Pl.'s Br. (Doc. 10) at 6-7.) To challenge this determination, Plaintiff contends that the ALJ's decision to discount a medical opinion, stating Plaintiff could not stand for more than an hour at a time, is no longer supported by substantial evidence due to the new evidence

---

[4] To qualify for a "sentence six" remand, Plaintiff must demonstrate that the evidence for which he seeks remand is (1) "new," meaning it is not duplicative or cumulative; (2) "material," meaning there is a reasonable possibility that it would have changed the outcome; and that (3) there is "good cause" for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Wilkins, 953 F.2d at 95-96; see also Fagg v. Chater, No. 95-2097, 1997 WL 39146, at *2 (4th Cir. 1997) (per curiam) (placing the burden on plaintiff to prove these three factors). The evidence Plaintiff puts forward are treatment notes from early 2011, and the ALJ's hearing took place in September 2011 - meaning that this evidence is not "new" within the meaning of sentence six. Therefore, a "sentence six" remand is not the appropriate procedural step at this point.

submitted to the Appeals Council.[5]  For reasons stated herein, this court agrees and will remand for a rehearing.

Kristina Silberstein is a Physician Assistant - Certified ("PA-C") and was Plaintiff's primary care provider during the relevant time period.  (Tr. at 66.)  Silberstein submitted a medical source statement on June 29, 2011,[6] asserting that Plaintiff can stand/walk for less than two hours total in an eight-hour workday with normal breaks, as Plaintiff's foot problems prevent him from standing for more than an hour at a time.  (Id. at 66, 484-85.)

In his decision, the ALJ assigned "little weight" to Silberstein's opinion.  (Tr. at 66.)  Instead of finding that Plaintiff was limited in the amount of time he could stand or walk, the ALJ assessed Plaintiff's RFC as being capable of "medium work," which often requires "a good deal of walking or standing," see 20 C.F.R. § 416.967(b)-(c) (incorporating the

---

[5] Plaintiff's other arguments concern (1) the ALJ making an improper credibility finding regarding Plaintiff's testimony and (2) the ALJ's mental RFC calculation and the evidence the ALJ considered regarding Plaintiff's mental impairments.  (Pl.'s Br. (Doc. 10) at 9-12.)  However, because this court will remand for a rehearing for other reasons, this court need not consider these arguments made by the parties.

[6] Although not made by a physician, Silberstein's opinion is nonetheless a "medical opinion" from an "acceptable medical source."  As a result, the ALJ must consider the opinion and determine the weight to give the opinion under 20 C.F.R. § 404.1527.

-10-

definition of "light work" into the definition of "medium work"), and specifically found that Plaintiff could stand and/or walk for six hours in an eight-hour day. (Id. at 64.)

The ALJ explained his decision to not assign much weight to Silberstein's opinion.  First, the ALJ found conflicting evidence with Silberstein's assessment that Plaintiff could not maintain employment after 2003 due to his foot pain.  (Id. at 67.)  Because the ALJ found these assertions conflicted with Silberstein's own treatment records and other evidence, the ALJ found that there was "a huge cloud of doubt over her credibility as a limitation assessor - a doubt that the [ALJ] took into great consideration."  (Id.)  Second, the ALJ placed "great weight" on the State agency physical assessment.  (Tr. 68, 258-265.)  That assessment found that Plaintiff could "[s]tand and/or walk (with normal breaks) for a total of . . . about 6 hours in an 8-hour workday." (Id. at 259.)  Third, the ALJ added that "it does not help matters that the record evidence, as of June 13, 2009, and forward, does not contain much treatment history for the claimant's plantar fasciitis." (Id. at 67.)

In analyzing the ALJ's decision, this court is careful not to reweigh Silberstein's credibility or make judgments as to any conflicting medical evidence, as those determinations are firmly

-11-

within the purview of the ALJ. Mastro, 270 F.3d at 176. Instead, this court must review the record to find whether or not the ALJ's determinations are supported by substantial evidence. After conducting this analysis, this court finds that the ALJ has not provided sufficient explanation for the lack of weight he assigned Silberstein's opinion.

First, as Plaintiff points out in his brief, the ALJ's conclusion that Silberstein's own treatment notes contradicted her opinion does not appear to be supported by substantial evidence. (Pl.'s Br. (Doc. 10) at 6-8.) In her treatment notes dated June 29, 2011, Silberstein indicates that Plaintiff "says his chronic foot pain makes [Plaintiff's vocational training for work as a truck driver] difficult - he has spasm in the L leg every day after he does the training." (Tr. at 472.) About this note, the ALJ found that Silberstein's conclusion that Plaintiff could not work or stand for long periods due to his plantar fasciitis was undercut by the fact that Plaintiff's "trouble" was "coming from experiencing spasms in his left leg every day after doing the training, not from the plantar fasciitis as Ms. Silberstein seems to indicate in her statement." (Tr. at 67.) Additionally, the ALJ identified statements by Plaintiff that his mental impairments had prevented him from maintaining

-12-

employment, indicating to the ALJ that physical impairments had not played a role.

Cautious not to reweigh conflicting evidence, this court is uncertain whether and how Plaintiff's inability to complete his training due to leg spasms is in contradiction with his complaints of plantar fasciitis. In his opinion, the ALJ offers no explanation as to why the ALJ found these statements contradictory. The ALJ stated that this contradiction was a "great consideration" as he made his decision (id. at 67), and without further explanation of how these facts are in contradiction, it is difficult to review whether the ALJ properly weighed Silberstein's medical opinion.

Second, the evidence that is now contained within the record undercuts the ALJ's statement that "the record evidence . . . does not contain much treatment history for [Plaintiff's] plantar fasciitis." (Id.) The ALJ used the lack of evidence to confirm the little weight he gave to Silberstein's opinion. (Id.) Reviewing the transcript, there is evidence in the record of Plaintiff's complaints of chronic foot pain and diagnosis of plantar fasciitis and bone spurs, dating from July 2010. (See, e.g., id. at 428-30, 437, 441, 474, 486-88.) Plaintiff was also examined by podiatrist, Dr. Mark Pifer, who found that Plaintiff had "inferior calcaneal spurs in both feet with the left being

-13-

worse than the right," and prescribed molded foot orthotics and pain medication. (Id. at 561-63.)

The treatment notes from Dr. Pifer were incorporated by the Appeals Council into the administrative record. (Id. at 5.) Because "the Appeals Council consider[ed] the new evidence but decline[d] to review the case," this court must "review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992). Based on the evidence from Dr. Pifer, this court finds that the ALJ's statement that there are no records of treatment is unsupported.

Again, this court does not reweigh the credibility of Silberstein's observations that Plaintiff could not stand for more than an hour at a time. But, when this court looks to the reasons why the ALJ discounted Silberstein's medical opinion – an apparent contradiction between Plaintiff's statements concerning leg spasms and Silberstein's discussion of plantar fasciitis as well as a lack of treatment for plantar fasciitis – this court finds that those reasons are no longer valid based on the evidence that is contained in the administrative record. As a result, the ALJ has completely discounted the opinion of a medical source without providing sufficient explanation.

-14-

Furthermore, the court notes that the ALJ's decision to assign little weight to Silberstein's medical opinion does appear to have impacted the outcome in this case due to the interplay of the Medical-Vocational Guidelines. The ALJ determined that Plaintiff could perform all of the physical exertional requirements of "medium work." (See Tr. at 64 (finding Plaintiff could "lift/carry 50 pounds occasionally and 25 pounds frequently" and "stand/walk 6 hours in an 8-hour workday").) If Silberstein's opinion was credited at all, it would appear that the ALJ would not be able to conclude that Plaintiff could perform such work. Under the Medical-Vocational Guidelines, a finding that Plaintiff could only perform "light work" - which would still require "a good deal of standing or walking," see 20 C.F.R. § 416.967(b) - would render Plaintiff "disabled" under Guideline 202.06 as of his 55th birthday, a mere three months after the alleged onset date. See 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.2, § 202.06. A finding that Plaintiff could only perform "sedentary work," would similarly require a finding of "disabled" under Guidelines 201.06 and 201.14, assuming that Plaintiff does not have transferrable skills. See id. tbl.1, §§ 201.06, 201.14. Because the exertional limitations potentially exhibited by Plaintiff determine where Plaintiff falls within the Medical-Vocational

-15-

Guidelines, Silberstein's opinion as to whether Plaintiff can stand or walk for less than an hour at a time must be carefully weighed.

At the same time, this court cannot direct a finding of disability at this point due to additional findings that must be made. For instance, the ALJ has not determined whether or not Plaintiff has "transferrable" skills, and in the Medical Vocational Guidelines, this issue could determine whether the Guidelines direct a finding of disability or not. Accordingly, this court will remand for a rehearing so that the ALJ may consider these issues.

### III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **REVERSED** and that this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, consistent with this Memorandum Opinion and Order. As a result, the Commissioner's motion for judgment on the pleadings (Doc. 12) is **DENIED,** and Plaintiff's motion to reverse the Commissioner (Doc. 9) is **GRANTED.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 29th day of July, 2015.

_____
                United States District Judge